# EXHIBIT 1

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER<br>1437 Bannock St.<br>Denver, CO 80202 | DATE FILED: January 22, 2024 8:22 AM<br>FILING ID: 1F574580AAD48<br>CASE NUMBER: 2024CV30202<br><br>▲COURT USE ONLY▲ |
| **Plaintiff:**<br>RUSSELL CARHART, in his capacity as Managing General Partner of Eons Expos, RLLLP<br><br>v.<br><br>**Defendant:**<br>LOWELL P. CARHART, an individual | Case Number: |
| **Attorneys for Plaintiff:**<br>Denise Hoffman White, #33143<br>Joseph A. Orrino, #50499<br>Laura K. Ross, #57481<br>HOFFMAN NIES DAVE & MEYER LLP<br>5350 S. Roslyn St., Suite 100<br>Greenwood Village, Colorado 80111<br>Phone No.: 303-860-7140 / Fax No.: 303-860-7344<br>dhoffman@hn-colaw.com / jorrino@hn-colaw.com / lross@hn-colaw.com | Division:<br>Courtroom: |
| **COMPLAINT** ||

Russell Carhart, in his capacity as Managing General Partner of Eons Expos, RLLLP ("Russell") submits the following for its Complaint against Lowell P. Carhart ("Lowell"):

## STATEMENT OF THE CASE

1.      Eons Expos, RLLLP ("Partnership") is a Colorado registered limited liability limited partnership that was formed in 2010. This case concerns a dispute between Russell and Lowell, who are brothers and partners in the Partnership. As set forth below, Russell is the majority general partner and also the Managing General Partner of the Partnership. As the sole Managing General Partner, Russell has sole authority to manage and bind the Partnership. Lowell was also a Managing General Partner but, after years of malfeasance that may include theft and diversion of Partnership opportunities, Russell exercised his right to remove Lowell as a Managing General Partner. Lowell refuses to accept his removal, and instead clings to a new

1

and self-serving narrative about the Partnership's ownership structure, claiming that Russell lacks authority to remove Lowell as a Managing General Partner. Notably, Lowell's new narrative is wholly inconsistent with key documents, including the Partnership Agreement and the Partnership's federal tax returns filed over the past four years, which Lowell prepared and signed. Lowell, as described herein, has also retaliated against Russell and taken steps to actively prevent Russell from exercising his right and duty to manage the Partnership. Russell brings this action to ask the Court to confirm Russell's and Lowell's respective rights with respect to the Partnership, including under the Partnership's Partnership Agreement. Russell also asks the Court to direct Lowell to provide Russell with important documents and information related to substantial expenses that Lowell may have improperly charged to the Partnership so that Russell may determine a path forward in the best interest of the Partnership with respect to such expenses.

## PARTIES

2.   Russell is a resident of the State of New Jersey and manages the operations of the Partnership. In the course of performing his duties, Russell regularly travels to and manages Partnership operations in the State of Colorado.

3.   Lowell P. Carhart ("Lowell") is a limited partner and former Managing General Partner of the Partnership. Lowell resided in Colorado from approximately 2008 through approximately 2011. From approximately 2010 and until recently, Lowell has been involved in managing certain Partnership affairs, including Partnership's operations in the State of Colorado.

## JURISDICTION AND VENUE

4.   This Court has personal jurisdiction over Lowell pursuant to C.R.S. § 13-1-124, based in part upon the fact that Lowell has transacted business in the State of Colorado.

5.   Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1).

## GENERAL ALLEGATIONS

I.   THE PARTNERSHIP'S HISTORICAL OWNERSHIP AND MANAGEMENT

6.   The Partnership operates three annual gemstone and mineral tradeshows, one in Denver, Colorado ("Denver Show"), one in Tucson, Arizona ("Tucson Show"), and one in Edison, New Jersey.

7.   When formed in December 2010, the Partnership had two general partners (Wealth Accumulators, LLC ["Wealth Accumulators"] and Christine Coyle ["Christine"], who is the sister of Russell and Lowell) and one limited partner (Entrust Arizona LLC FBO Lowell P. Carhart IRA 17-44173 ["Lowell's IRA"]) (collectively, "2010 Partners").

2

8. On or about December 16, 2010, the 2010 Partners entered into a Partnership Agreement ("Partnership Agreement"). A copy of the Partnership Agreement is attached as **Exhibit A**.

9. On December 17, 2010, Lowell wrote an email to Russell and Christine, which stated:

"I [Lowell] will be a Limited Partner partly because one of us must be, Christine cannot be, I haven't read this and hence don't understand the difference, and because I want to be as far away from the legalities as possible just so it doesn't unravel my self-directed Roth-IRA."

10. According to the email referred to in paragraph 9, Lowell's interest in the Partnership was as a limited partner, and held in an IRA, not by Lowell individually.

11. When Lowell signed the Partnership Agreement on behalf of his IRA, he did so under the signature block heading, "LIMITED PARTNERS".

12. Each of the 2010 Partners originally owned one-third (1/3) of the total partnership interests. The interests were held as follows:

| Name | Percentage Interest | General or Limited Partner Interests |
|---|---|---|
| Wealth Accumulators | 33.333% | General |
| Christine | 33.333% | General |
| Lowell's IRA | 33.333% | Limited |

13. By executing the Partnership Agreement, the 2010 Partners agreed that the Partnership would be managed by one or more Managing General Partner.

14. The original Managing General Partners were Lowell, Russell, and Christine in their individual capacities. (Partnership Agreement at ¶ 2.1)

15. The Partnership Agreement does not limit appointment of Managing General Partners to general partners.

16. The Partnership Agreement states that general partners who are not Managing General Partners "shall not be responsible for the management of the Partnership, shall not have authority to bind the Partnership, and agree not to take any action to bind the Partnership." (Partnership Agreement at ¶ 2.1)

17. In or around 2013, Partnership employee Heather Grana ("Heather") was granted a limited partner interest in the Partnership that, upon issuance, was equal to 1% of the total partnership interests in the Partnership. After that issuance, the interests in the Partnership were held as follows:

| Name | Percentage Interest | General or Limited Partner |
|---|---|---|
| Wealth Accumulators | 33% | General |
| Christine | 33% | General |
| Lowell's IRA | 33% | Limited |
| Heather | 1% | Limited |

18. By 2012, Wealth Accumulators, LLC had assigned its units to Russell individually. After that assignment, the interests in Eons Expos were held as follows:

| Name | Percentage Interest | General or Limited Partner |
|---|---|---|
| Russell | 33% | General |
| Christine | 33% | General |
| Lowell's IRA | 33% | Limited |
| Heather | 1% | Limited |

19. On June 16, 2016, Lowell, purportedly purchased 6.4686 of Christine's units for $49,000.00.

20. In the letter, Lowell stated that the $49,000.00 was for the purchase "of 6.4686 shares (e.g. 'ownership percentage points') at $7,575 per point of Eons Expos, LLLP."

21. Although Russell and Lowell discussed purchasing an equal share of these partnership interests from Christine, Lowell entered into this transaction without Russell's knowledge and purchased all of Christine's available partnership interests himself.

22. It is possible that, by the time Lowell made this purchase, Christine's interest in the Partnership had converted to that of a limited partner rather than a general partner. If this is accurate, then interests transferred from Christine to Lowell would not have been general partner interests.

23. Since the Partnership was formed, Lowell, without informing any other partners and without obtaining approval of any other partners, has regularly made Partnership filings with the Colorado Secretary of State. In one such filing, dated December 7, 2018, Lowell stated that Christine became a limited partner on December 31, 2012.

24. Historically, however, Lowell has made frequent filings with the Colorado Secretary of State providing contradictory versions of the Partnership's ownership structure, based on whatever version served his interest at the time. While these filings show Lowell's position about the Partnership's ownership as it has evolved to suit his needs over time, these filings are generally not credible evidence of actual ownership.

25. As of the date of this Complaint, and as discussed in herein, Lowell's current view is that Christine was a limited partner at the time of his purchase of her 6.4686 unit interests, even though it contradicts Partnership tax filings that Lowell prepared and signed for

4

tax years 2019-2022.

26. Upon information and belief, Lowell used Partnership funds to pay to Christine the $49,000.00, and Lowell never executed a joinder agreement as required by the Partnership Agreement for Lowell to become a limited partner or a general partner. (*See* Partnership Agreement at ¶ 3.3)

27. For Lowell, who was not a general partner, to become a general partner after the purchase of the units, the Partnership Agreement required that he obtain the approval of partners owning at least 50% of the general partner units, but this approval was never sought by Lowell nor given. (*See* Partnership Agreement at ¶ 3.4)

28. Even though Lowell's counsel (*see* paragraph 64) and his filings with the Colorado Secretary of State suggest that Lowell he received a limited partnership interest from Christine, Lowell prepared and signed Partnership tax returns for 2019-2022 stating that the interests he received from Christine were general partnership interests.

29. Solely for the purpose of the analysis set forth in this Complaint, Russell assumes the accuracy of the position that Lowell took until a few days before the date of this Complaint: That Lowell received general partner interests from Christine.

30. With that assumption in mind, after Lowell purportedly purchased interests from Christine, the interests in the Partnership were held as follows:

| Name | Percentage Interest | General or Limited Partner Interest |
|---|---|---|
| Russell | 33% | General |
| Christine | 26.5314% | General |
| Lowell | 6.4686% | General |
| Lowell's IRA | 33% | Limited |
| Heather | 1% | Limited |

31. While the exact timing of the conversion of Christine's interest to that of a limited partner is in doubt, it is not in dispute that Christine had been converted to a limited partner by some time in 2020.

32. Upon such conversion, the Partnership interests were held as follows:

| Name | Percentage Interest | General or Limited Partner Interest |
|---|---|---|
| Russell | 33% | General |
| Christine | 26.5314% | Limited |
| Lowell | 6.4686% | General |
| Lowell's IRA | 33% | Limited |
| Heather | 1% | Limited |

5

33. In 2023, Russell purchased all of Christine's remaining interest in Eons Expos.

34. After that purchase, and as of the date of this Complaint, the interests in Eons Expos are held as follows:

| Name | Percentage Interest | General or Limited Partner Interest |
|---|---|---|
| Russell | 33% | General |
| Russell | 26.5314% | Limited |
| Lowell | 6.4686% | General |
| Lowell's IRA | 33% | Limited |
| Heather | 1% | Limited |

35. In recent years, and until a few days before the date of this Complaint when it no longer suited his interests, Lowell repeatedly confirmed that the Partnership's ownership was as set forth in paragraph 34.

36. Lowell was responsible for directing the preparation and filing of the Partnership's tax returns for tax years 2019, 2020, 2021, and 2022 ("Tax Returns").

37. The CPA that prepared the Tax Returns did so relying on information provided by Lowell.

38. Lowell signed the Tax Returns on behalf of the Partnership.

39. The Tax Returns reflect the Partnership's ownership exactly as set forth in paragraph 34.

40. For example, K-1s for each of the Tax Returns state that Lowell's IRA (not Lowell) owns a 33% interest in the Partnership, and that Lowell's IRA is solely a limited partner.

II. RUSSELL IS THE MAJORITY GENERAL PARTNER

41. According to the Tax Returns, Russell and Lowell are the two general partners.

42. And, according to the Tax Returns, Russell's general partnership interest represents 33% of all partnership interests (which is 83.61% of all general partnership interests), while Lowell owns 6.4686% of all partnership interests (which is only 16.39% of all general partnership interests).

43. Therefore, according to the Tax Returns that Lowell prepared and signed, Russell is the majority general partner.

44. And if Lowell's purchase of a portion of Christine's interest was not effective, or if it did not result in Lowell becoming a general Partner, Russell owns 100% of all general

partner interests.

45. In any case, Russell owns a majority of all general partner interests in the Partnership.

III. REMOVAL OF LOWELL AS MANAGING GENERAL PARTNER

46. Under Section 2.1 of the Partnership Agreement, a Managing General Partner shall be "selected and removed by Partners owning more than 50% of the General Partner Units owned by partners."

47. Section 2.1 of the Partnership Agreement further states that, "the decision of the Partners owning more than 50% of the General Partner Units owned by Partners shall be deemed a decision of all of the General Partners."

48. Finally, Section 2.1 of the Partnership Agreement vests management of all of Eons Expos' operations in the Managing General Partner(s), and states that "General Partners other than the Managing General Partners shall not be responsible for the management of the Partnership, shall not have authority to bind the Partnership, and agree not to take any action to bind the Partnership."

49. Under the Partnership Agreement, therefore, Russell acting alone as a general partner has authority to remove a Managing General Partner.

50. On January 17, 2024, Russell acting as the Partnership's general partner holding a majority of general partnership interests, removed Lowell as a Managing General Partner.

51. To memorialize his action, Russell executed Consent in Writing of the Majority General Partner of Eons Expos, RLLLP dated January 17, 2024 ("Consent Minutes"). The Consent Minutes are included as **Exhibit B**.

52. Russell, through counsel, provided Lowell notice of his removal on January 17, 2024 by transmitting the Consent to Lowell's counsel, with the letter included as **Exhibit C** ("Letter").

53. Therefore, as of January 17, 2024, Russell has been the sole Managing General Partner of Eons Expos.

54. Although Lowell was removed as a Managing General Partner, in the Letter Russell agreed to provide Lowell with a login to the Partnership's QuickBooks account, permitting Lowell to have full and real time visibility into the Partnership's financial affairs.

55. Lowell was provided with login information and a password for QuickBooks when the Consent Minutes were sent to him. But his access may be inhibited by problems with the Partnership's email accounts that Lowell caused, which are described further in paragraphs

69-75.

56. Although the Partnership Agreement does not require "cause" for a majority general partner to remove a Managing General Partner, Lowell was removed for reasons that include, without limitation, the following, which are currently under investigation:

    a. Refusal to provide documents to substantiate substantial expenses for which Lowell was reimbursed or seeks reimbursement;

    b. Improper diversion of Partnership opportunities through use of a Partnership-compensated real estate broker to find and facilitate real estate opportunities for Lowell individually;

    c. Misappropriation of Partnership funds for personal expenses;

    d. Disrupting the Partnership's operations by limiting access to key accounts and services for the Partnership;

    e. Seeking or making significant payments to himself in service of "loans," regardless of whether the Partnership's cash flows justified such payments;

    f. Diverting payments on loans made by Lowell's IRA to Lowell personally;

    g. Paying himself an unauthorized and disproportionate salary;

    h. Paying funds to himself as distributions or salary that should have been paid to Lowell's IRA as distributions; and

    i. Paying unauthorized dividends at times to all partners, but other times only to himself, regardless of the Partnership's cash flows and the Partnership's best financial interests.

## IV. LOWELL'S REFUSAL TO HONOR REMOVAL AND INTERFERENCE WITH RUSSELL'S MANAGEMENT OF EONS EXPOS

57. Despite the fact that Russell had a legal and contractual right to take action to remove Lowell as a Managing General Partner, Lowell refuses to accept Russell's action.

58. After receiving notice of his removal, Lowell has both expressly denied the efficacy of the action, and has taken affirmative steps to retaliate against Russell for taking such action.

59. In an email from his counsel, sent less than an hour after Russell provided notice that Lowell was removed as a Managing General Partner, Lowell's counsel stated that the

8

Consent Minutes "are invalid and ineffective." This email is included as **Exhibit D**.

60. Lowell's counsel tries to support this position by claiming that Russell is not the majority general partner because, ". . . [Russell] did not acquire general partnership interests [from Christine]. . ."

61. Curiously, despite the Tax Returns, in the email, Lowell's counsel says that Lowell also only received limited partnership interests from Christine: "This is consistent with Lowell's equity as he only received limited partnership interests from Christine when she transferred a portion of her interest to him in 2016."

62. But, as set forth above in paragraphs 44-45, this is immaterial. The interests that Russell purchased from Christine are not included in the calculation of Russell's general partnership interests.

63. Curiously, and in contravention of the Tax Returns prepared and filed by Lowell, Lowell's counsel takes the position that Lowell also only received a limited partnership interest from Christine. If this is true then, as described in paragraphs 44-45, Russell is the sole general partner.

64. Lowell's counsel states that ". . . since Russell is not a majority general partner and has, at best, equal general partner equity as Lowell, the purported consent minutes are of no force nor effect."

65. But this view is not supported by any credible documentation:

   a. The Partnership Agreement states that Lowell's IRA (not Lowell) is a limited partner (not a general partner);

   b. Lowell's December 17, 2010 email (*see* paragraph 9) states that Lowell's IRA (not Lowell) was a limited partner (not a general partner); and

   c. The Tax Returns, prepared, filed, and signed by Lowell, state that Lowell's IRA (not Lowell) is a limited partner.

66. Outside of the interest in Lowell's IRA, the only other interest in the Partnership connected with Lowell is what he received from Christine, which represents only 6.4686% of total partnership interests and, according to Lowell's counsel, are not general partner interests.

67. As shown by opposing counsel's email, Russell and Lowell dispute each party's rights under the Partnership Agreement in at least two respects: First, with respect to whether Lowell is a general partner; and second, with respect to whether Lowell is a Managing General Partner.

68. By refusing to honor his removal from the role of Managing General Partner,

9

Lowell risks inflicting serious and irreparable harm on Eons Expos. It will undoubtedly lead to confusion among third parties, including vendors and exposition participants, who interact and conduct business with Eons Expos.

V.     LOWELL'S RETALIATION

69. Shortly after Lowell received notice of his removal, Lowell accessed the Partnership's email system and disabled the Partnership's ability to receive emails.

70. Upon information and belief, this was an intentional effort to retaliate against Russell.

71. Now, when anyone attempts to email Russell's Partnership email account, the sender receives a notice stating that the email cannot be delivered.

72. As a result, Russell is unable to receive emails critical to his ability to manage the Partnership's affairs, which he has a right to do under the Partnership Agreement.

73. This is also likely to harm the Partnership because vendors and third parties may be prevented from conveying critical information to Russell.

74. The issue is especially acute as of the date of this Complaint: The Tucson Show is set to begin on January 25, 2024, and Russell plays an integral role in the setup and operations of the Tucson Show.

75. Upon information and belief, Lowell disrupted the Partnership's email system for the sole purpose of preventing Russell from transacting business as a Managing General Partner, and to disrupt a smooth and successful Tucson Show.

76. Under Section 2.1 of the Partnership Agreement, Russell is responsible for and has a right to manage the affairs of Eons Expos.

77. Russell's right to manage Eons Expos' operations exists regardless of whether or not Lowell was properly removed as a Managing General Partner or is a general partner.

78. This is consistent with Lowell's past behavior. For example, after Russell asked Lowell for documentation supporting thousands of dollars charged to Lowell's credit card for which Lowell sought reimbursement, Lowell retaliated by stopping payments to key services, and preventing Russell from resuming payments.

79. For example, Lowell's credit card was used to pay for the security certificate for the domain denver.show, which is the website for the Denver Show.

80. Since then, Lowell has refused to provide Russell with information necessary to access the website that would allow him to pay for the denver.show security certificate, and the

certificate expired.

81. Now, before any potential vendor or customer can access the Denver Show's website, they are met with a warning that states that the Denver Show's website is not secure and not private.

82. A screenshot of the warning that visitors receive is below:



83. This has harmed and will continue to harm the Partnership. Potential customers and vendors are unlikely to advance past this warning.

84. The problem extends beyond the website: The message conveyed by the warning on the website is that the Partnership does not have adequate security and controls in place, and that any sensitive information provided to the Partnership may be at risk. This can include credit card or financial information.

85. In addition to retaliating and obstructing Russell's duty and right to manage the Partnership, Lowell is continuing his trend of unauthorized and confusing filings.

86. Even though Lowell's IRA is a limited partner, and even though Lowell's attorneys stated on January 17, 2024 that Lowell received a limited partner interest from Christine, Lowell made a "corrective" filing with the State of New Jersey just the day before contradicting this, and further limiting Russell's ability to manage the Partnership.

87. This new filing states that Lowell is a general partner of the partnership and changes the mailing address for the partnership from Russell's address in New Jersey (where

11

Russell resides) to a postal service center at which Lowell receives mail.

88. Without clarity about whether Lowell has the right to manage the Partnership's affairs, Eons Expos will be unable to operate as it should. Heather, a Partnership employee and limited partner, emailed Russell on January 19, 2024 and provided a perfect illustration of the issue, and confirms that this cannot be resolved without judicial intervention. She states:

> ". . . I remain in the uncertain position of who holds controlling shares of the company. . . each side has their own agenda and narrative, neither of which can be validated without legal action and final judgment. . ."

89. In the same email, though purporting not to "take sides," she informed Russell that she will follow Lowell's direction, and will not be following Russell's direction for her not attend the Tucson Show at the Partnership's expense, where she has no role.

90. Notably, Heather and Lowell are business partners in another venture, so it is unsurprising that Heather is following Lowell's direction.

VI. ACCESS TO BOOKS AND RECORDS

91. Throughout the past 14 years, Lowell has operated on his own with reckless disregard to Eons Expos' best interests and has consistently refused to cooperate with reasonable requests for information from other partners.

92. Traditionally, Lowell has made purchases on a personal credit card and obtained reimbursements by submitting credit card statements, without additional documentation to substantiate the legitimacy of those charges or their relationship to the Partnership's operations.

93. Russell has made repeated requests for Lowell to provide documents to substantiate his reimbursements, but Lowell has consistently refused.

94. Lowell has a history of misappropriating the Partnership's funds for personal reasons.

95. For example, Lowell used the Partnership's funds to purchase an iPhone for his son while his son was approximately 13 years old.

96. Lowell has also used the Partnership's funds to pay for his mother to travel to babysit Lowell's children, and to provide her with a car rental and petty cash while babysitting Lowell's children.

97. As of the date of this Complaint, Lowell has received substantial reimbursements that have no supporting documentation other than his personal credit card statements, and he currently seeks reimbursement of thousands of dollars of additional expenses that he claims are related to the Partnership's business.

98. Upon information and belief, Lowell refuses to substantiate his expenses beyond providing credit card statements to conceal tens of thousands of dollars (or more) in personal expenses, which he holds out as business expenses.

99. Under Colorado law, including C.R.S. § 7-60-120, Lowell is required to provide information to substantiate his expenses for which he seeks or obtains reimbursement.

100. Lowell is presently demanding payment of these reimbursements, which Russell concedes should be paid if they are legitimate and substantiated.

101. Nonetheless, Lowell refuses to provide information to substantiate expenses.

102. Lowell's refusal to provide this information has prevented Russell from evaluating the legitimacy of Lowell's expenses, including both expenses that have been reimbursed and those for which he seeks reimbursement.

103. Over the years, Lowell has received hundreds of thousands of dollars of reimbursements, which has had a significant impact on the Partnership's cashflows and its ability to pay other obligations.

104. Russell requires additional information from Lowell to determine a course of action in the best interest of the Partnership as it pertains to these financial transactions.

## **FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

105. Russell incorporates the preceding allegations as if fully set forth herein.

106. A dispute and actual controversy has arisen between the parties with respect to the party's rights under the law and contract, including under the Partnership Agreement.

107. Russell is the majority general partner and, in such capacity, removed Lowell as a Managing General Partner on January 17, 2024.

108. Lowell disputes this, claiming that Russell is not a majority general partner and that Lowell was not removed as a Managing General Partner on January 17, 2024.

109. Since then, Lowell has retaliated against Russell, prevented him from managing the Partnership, and continues to do harm by holding himself out as a Managing General Partner.

110. Russell seeks a judicial determination and declaration of the parties' rights and obligations, including under the law, Partnership Agreement, and Consent Minutes.

111. All conditions precedent to the bringing of this action have happened or have otherwise occurred.

## SECOND CLAIM FOR RELIEF
**(Books and Records)**

112.   Russell incorporates the preceding allegations as if fully set forth herein.

113.   Both Russell and Lowell are partners of the Partnership.

114.   Partners have a duty to render, on demand, "true and full information affecting the partnership to any partner…" (C.R.S. § 7-60-120)

115.   Lowell has incurred tens of thousands of dollars in expenses on a personal credit card for which he has been reimbursed or seeks reimbursement.

116.   Other than the credit card statements themselves, Lowell has refused to provide documents substantiating the expenses and demonstrating their relationship to the Partnership's operations.

117.   Russell has demanded this substantiating information, and Lowell has continued to refuse to provide it.

118.   Russell is entitled to this information under Colorado law, including pursuant to C.R.S. § 7-60-120.

## PRAYER FOR RELIEF

WHEREFORE, Eons Expos prays for judgment and the following relief:

A.   Declaratory Judgment against Lowell and in favor of Russell confirming:

   a. That Russell is the majority general partner of the Partnership;

   b. That Russell validly executed the Consent Minutes as the majority general partner of the Partnership;

   c. That Lowell was removed as a Managing General Partner on January 17, 2024; and

   d. That Lowell, since he was removed as a Managing General Partner, is not authorized to bind the Partnership or take any action on behalf of the Partnership without authorization from a Managing General Partner.

B.   Order directing Lowell to deliver to Russell documents substantiating all expenses reimbursed by the Partnership, or for which reimbursement is sought from the Partnership, or that were paid directly by the Partnership for Lowell's benefit or that of his family members

14

and/or business entities, trusts, or accounts owned by Lowell or his family members, for 2019, 2020, 2021, 2022, and 2023.

       C.       All attorney fees or damages available at law.

       D.       All further relief as the Court deems proper.

DATED:  January 19, 2024

    HOFFMAN NIES DAVE & MEYER LLP

/s/
Joseph A. Orrino, #50499
*Attorney for Plaintiff*

Plaintiff's Address:

235 First Street
Keyport, NJ 07735

15